2001 OK CIV APP 77

In the Matter of R.H., M.V., B.V. and S.S., alleged deprived juveniles.

Leah Hock, Appellant,

v.

State of Oklahoma, Appellee.

No. 95,143.

Court of Civil Appeals of Oklahoma, Division No. 3.

March 16, 2001.

Certiorari Denied May 15, 2001.

W.L. Stout, Bracken & Stout, P.C., Ponca City, OK, for Appellant.

Mark L. Gibson, District Attorney, Newkirk, OK, for Appellee.

Opinion by KENNETH L. BUETTNER, Presiding Judge:

¶1 Before trial on Leah Hock's (Mother) termination of parental rights to

her four children, the trial court held a hearing to determine whether hearsay statements of the three children under the age of thirteen were admissible. State announced the children were available for testimony. The court made findings of reliability and ruled the statements admissible. We affirm.

¶2 The statements concern episodes of sexual assault on the two girls who were seven and four at the time. Some of the events were witnessed by the five year old boy.[1] The hearsay statements not only described the sexual abuse by "Uncle Hawk," an adult friend of Mother's, it also supported State's position that Mother knew or should have known of the assaults on her children.

¶3 Oklahoma law permitting hearsay statements of allegedly abused children who have not attained thirteen years is different from most similar laws because a 1992 amendment allows, after the reliability finding, admissibility of the out-of-court statement if the child testifies **or is available to testify at the proceedings** or televised in a room outside the courtroom with the attorneys, but not the parties, present. Certain non-exclusive factors in determining reliability were also added in 1993. Title 12 O.S. Supp.1998 § 2803.1 provides:

A. A statement made by a child who has not attained thirteen (13) years of age, which describes any act of physical abuse against the child or any act of sexual contact performed with or on the child by another, is admissible in criminal and juvenile proceedings in the courts in this state if:

1. The court finds, in a hearing conducted outside the presence of the jury, that the time, content and totality of circumstances surrounding the taking of the statement provide sufficient indicia of reliability so as to render it inherently trustworthy. In determining such trustworthiness, the court may consider, among other things, the following factors: the spontaneity and consistent repetition of the statement, the mental state of the declarant, whether the terminology used is unexpected of a child of similar age, and whether a lack of motive to fabricate exists; and

2. The child either:

a. testifies or is available to testify at the proceedings or pursuant to the provisions of Section 753 et seq. of Title 22 of the Oklahoma Statutes [televised in room outside the court with lawyers present, but not parties], or

b. is unavailable as defined in Section 2804 of this title as a witness. When the child is unavailable, such statement may be admitted only if there is corroborative evidence of the act.

B. A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement at least ten (10) days in advance of the proceedings to provide the adverse party with an opportunity to prepare to answer the statement.

¶4 The trial court specifically found the statements reliable stating that the statements were consistent in nature, that the terminology used was that of a child and that the statements were reasonable, trustworthy and made spontaneously. The notice containing the statements was properly made. The children were physically available to testify, but were not called. The hearsay statements were sponsored by people who heard the statements: a child welfare worker for the Department of Human Services; a detective of the Ponca City Police Department; a psychologist who treated the children; a foster parent for two of the children; a licensed professional counselor who counseled the children and the mother; and the child welfare case worker to whom the case was assigned.

¶5 Mother contends that the requirements of 12 O.S. Supp.1998 § 2803.1 were not met and that the hearsay statements should have been excluded. Specifically, she claims that the trial court was required to determine whether the children were available to testify. She claims that the children were not available to testify because they were not competent to testify.

1. The fifteen year old boy testified so admissibility of hearsay was not relevant to him.

¶ 6 Although the trial court did not make a "finding" that the children were available to testify, that announcement was made during the § 2803.1 "reliability" hearing, and Mother concedes that the children were physically available to testify during the trial.

¶ 7 With respect to the failure to make a "competency to testify" determination, the burden to show lack of competency is on the party objecting to the witness. "One who questions competency of witness has the burden of proof." *Wheaton v. State,* 85 Okla.Crim. 132, 185 P.2d 931, syllabus by the court ¶ 3.

> Under 12 O.S.1991 § 2601, all persons are presumed competent to testify. A child is a competent witness under 12 O.S.1991 § 2603, if he or she can distinguish truth from fiction, has taken an oath, and demonstrated that he or she has personal knowledge of the crime. [Citations omitted.] Determination of a witness' competency to testify is a matter of discretion for the trial judge and that determination will not be disturbed unless the party asserting the error shows a clear abuse of discretion.

*Gilson v. State,* 2000 OK CR 14, 8 P.3d 883, 906.

¶ 8 There are two times that competency of a witness may be challenged: (1) at the time of the out-of-court statement, and (2) at the time of trial. With respect to the § 2893.1 exception to the hearsay rule, competency to testify at the time the out-of-court declaration was made is merely a factor to be used in the reliability finding, and is not necessarily the determining factor. "There is no logical reason for denying admission of out-of-court statements that circumstances indicate originate from a child's 'rooted ingenuousness' merely because he or she appears unable to understand, in the abstract, the duty to tell the truth....[A] child's truth competence is a factor in determining the reliability of a hearsay statement, it is not necessarily the decisive fact." *In re Cindy L.,* 17 Cal.4th 15, 947 P.2d 1340, 69 Cal. Rptr.2d 803, 816. Otherwise, the statements given by very young children to competent adults would be inadmissible, solely because, for example, the child still believed in Peter Pan.

¶ 9 In summary, Mother was given proper notice of State's intention to introduce the hearsay statements of the three children younger than thirteen about alleged abuse. The children were physically available to testify. The court made findings that the statements had sufficient indicia of reliability. A child's ability to tell the truth or otherwise be a "competent" witness at the time the out-of-court declaration was made is one of the factors the court may consider when determining reliability. For instance, a child who has a reputation for mendacity may have his competency at the time of his declaration challenged. If so, it must be challenged by the opponent of the statement. Nonetheless, whether the court finds lack of competency fatal to the reliability of the proposed hearsay is in its discretion. Lack of competency at the time of the declaration is not, in itself, a bar to a finding of reliability.

¶ 10 We acknowledge that before § 2803.1 was amended in 1992 and 1993, the Court of Civil Appeals, in *Matter of A.S.,* 1989 OK CIV APP 91, 790 P.2d 539, 542, stated that the trial court did not err in finding A.S. unavailable because of incompetency, but remanded the case for a finding with respect to competency at the time the out-of-court statements were made. In addition, in *Matter of A.D.B. and C.B.,* 1989 OK CIV APP 55, 778 P.2d 945, the court held that incompetency at time of trial made the child "unavailable" under § 2803.1(A)(2), and remanded for a determination whether the child was competent at the time the out-of-court statements were made.

¶ 11 However, by setting forth factors to consider when determining the reliability of the out-of-court statements, it seems clear that the Legislature rejected traditional competency at the time the statement was made as an essential element. The purpose of § 2803.1, originally enacted 1984, is to establish a procedure to admit out of court statements of children under age 13. If an out-of-court statement could not be admissible because the declarant was incompetent at the time of the declaration, then there would be no need for a reliability finding.

¶ 12 We agree with *Matter of A.S.* that incompetency at the time of trial may make the child unavailable under § 2803.1(A)(2)(b). However, as stated above, it is the burden of the opponent of the witness to raise and demonstrate that the child is incompetent. Mother failed this burden.[2]

 ¶ 13 Next, Mother argues that admission of the hearsay statements, which were explicit, were so repugnant and inflammatory that, albeit relevant evidence, she was unable to overcome the prejudice of the statement and was thus denied a fair trial. However, Mother agrees that admission of evidence is within the discretion of the trial court and this court will not reverse absent a strong showing of prejudice or a breach of fundamental rights. *American Biomedical Group, Inc. v. Norman Regional Hospital Authority*, 1993 OK CIV APP 83, 855 P.2d 1074, 1079. We cannot find an abuse of discretion in this case where the evidence of sexual abuse was a required element in the termination proceeding.

 ¶ 14 Finally, Mother asserts that the state did not prove that she failed to correct the conditions that caused her children to be adjudicated deprived. Before the allegations of sexual abuse, Mother had been under a plan provided by DHS and approved by the Court for correcting other conditions in her household which had led to an adjudication of deprived children. She had been fairly suc-

cessful in her attempts at correcting the conditions and her children were returned to her. Soon thereafter, however, the allegations came to light that the two little girls were being sexually abused by "Uncle Hawk," a friend of Mother's, and that she knew about this. The two boys witnessed some of the acts. There was also evidence, for instance, that the five year old boy weighed only 29 pounds and had scars on his hands from rat bites. Both girls were in desperate need of dental care, both requiring root canals. The children had not been bathed for several days and had head lice. The four-year old had venereal warts. The fifteen year old boy had a club foot which was not being cared for. Both psychologists testified that it was in the children's best interests that the parental rights of Mother be terminated. The children were thriving in foster care.

¶ 15 State sought to terminate Mother's parental rights pursuant to 10 O.S. Supp. 1998 § 7006–1.1(A)(5) and § 7006–1.1(A)(10)(a). These sections allow State to seek termination of parental rights, with the paramount consideration being the health, safety, or welfare, and the best interests of the child, when the parent has failed to correct the conditions which led to the adjudication and when the parent has failed to protect the child from physical or sexual abuse which is heinous or shocking to the court.[3] There is no merit to Mother's contention.

---

**2.** In *Gilson v. State, supra* at 906, when the children's competency to testify was challenged, the trial court conducted an *in camera* hearing in which the defense presented testimony of an expert concerning her opinion of the children's competency to testify. Before trial, the court conducted *voir dire* of the children, individually and *in camera*. The court then heard argument of counsel after which it made its ruling that the children were competent to testify. The court stated "that each child indicated a personal knowledge of the facts and circumstances of the case; they understood the importance of telling the truth and they understood what it meant to take an oath." It noted that problems credibility, such as lack of memory of the event, could be addressed on cross-examination. On review, the "[d]etermination of a witness' competency to testify is a matter of discretion for the trial judge, and that determination will not be disturbed unless the party asserting error shows a clear abuse of discretion." *Dunham v. State*, 1988 OK CR 211, 762 P.2d 969, 972.

**3.** 10 O.S. Supp.1998 § 7006–1.1 (the 2000 amendments are not relevant to this opinion):

(A) Pursuant to the provisions of the Oklahoma Children's Code, the finding that a child is delinquent, in need of supervision or deprived shall not deprive the parents of the child of their parental rights, but a court may terminate the rights of a parent to a child in the following situations. The paramount consideration in proceedings concerning termination of parental rights shall be the health, safety and best interests of the child:

5. A finding that:
 a. the child has been adjudicated to be deprived, and
 b. such condition is caused by or contributed to by acts of omissions of the parent, and
 c. termination of parental rights is in the best interests of the child, and
 d. the parent has failed to show that the condition which led to the adjudication of a child deprived has been corrected although

¶ 16 For the reasons stated, we AFFIRM the order terminating the parental rights of Leah Hock in her children R.H., M.V., B.V. and S.S.

HANSEN, C.J., and GARRETT, J., concur.

the parent has been given not less than the time specified by Section 7003–5.5 of this title to correct the condition;
10. A finding in a deprived child action either that:

a. the parent has physically or sexually abused the child or a sibling of such child or failed to protect the child or a sibling of such child from physical or sexual abuse that is heinous or shocking to the court,